Good morning. If the court pleases, my name is Kim Mann. I represent the Petitioner National Association of Agriculture Employees in this case, and I would like to reserve five minutes of my time for a moment, if I may. You may. This case brings to the court two specific issues, one procedural dealing with jurisdiction, and the other dealing with the merits of our of the Federal Service Labor Management Relations Act, which I'm just going to call a statute here if I may, whether the court has jurisdiction to review the ruling of the Federal Labor Relations Authority that the agriculture specialists are no longer professional employees. And this issue comes to the court pursuant to a motion to dismiss filed by the Federal Labor Relations Authority. And it's the second time that this issue is before this court. About five months ago, FLRA filed its motion, and the court a month later, albeit a different panel, although you were on that panel, you were, sure. Oh, no, it comes up again. But the court ruled, denied the motion to dismiss without comment except to say that it was without prejudice to re-raising it on their briefing papers, which they have done. They thought it was so interesting, they wanted to let the merits panel have fun with it. Apparently. Somebody must have thought it was of interest. It is to me, too. That's pretty important when you're talking about in the area of labor relations, because what, you know, what are the, you know, I noticed that you admit the authority's decision involved an appropriate unit determination under 7-11-12, right? We don't admit that at all, no. We admit that there was a decision in which there were appropriate unit determinations. Actually, there were two such decisions made in the particular proceeding, but we don't admit that the ruling that we're talking about, that is, the agriculture specialists are not professional employees, was a 7-11-12 ruling. We don't admit that, and we don't admit that it was in connection with or involved with a unit determination at all. And we believe that that... So, if it's an appropriate determination under 7-11-12, it would seem to me that that's the end of the inquiry. It would be, Your Honor. Absolutely. Because that's what they do. Correct. And they, and there are things that, for reasons that, you know, albeit are many, why they don't want the court sticking their fingers in certain things. That, you're absolutely correct, and the operative words are that it has to be issued under 7-11-12 of the statute, and it has to involve an appropriate unit determination. We don't think that the decision that we're talking about, which is the ruling on the employee status of our agriculture specialists, falls into either one of those categories. And naturally, the FLRA is urging that there be a very broad ruling of this special exception to review. NAE, the National Association of Agriculture Employees, says there should be a narrow interpretation of that particular exception, which is consistent not only with the earlier decision of this circuit on our motion to Smith, but also with the lead case, which is Isinger v. FLRA. And that court also endorsed a very, very narrow reading of that interpretation. And that's the interpretation that we believe is applicable here, and we find, we don't believe that they presented any new arguments on their brief that would warrant any kind of reversal of the particular decision reached by this circuit earlier. Well, it didn't really reach a decision. It just... They denied the motion to dismiss. I know what they did. I've got the copy of the motion, and I've sat on motions panels, and I know what we do on them. I don't think they decided the merits. They rolled it over to the merits panel. We just didn't stop the election. Well, we're actually... Without arguing, let's not spend time on what we've done, because we've got to deal with what we've got in front of us, and assume that the panel will address the jurisdictional issue, because we have to. Jurisdiction is always at issue, and has to be resolved. My question is, do you or do you not think this case comes within the purview of Leedham v. Kine? We don't think it does. We've never argued that it does. I noticed you hadn't, and I was astonished that you hadn't. I think that there were many cases that came afterwards that started distinguishing that a case away, and it basically dealt with can you bring in an appeal in the district court, and it was under very special circumstances, which I don't think apply in our case, and we could not, in good faith, argue that that fell within that particular exception. Right, because the reason I thought it at least sounded comparable to your case was suppose that the NLRA, excuse me, the... FLRA. Not the NLRA. The other one. The government. Right. N-F-L-R-A. I should know that. I used to deal with it. FLRA, decided, clearly in the face of the statute, combined, in face of the prohibition, took an undisputed professional group of employees and put them in together with a undisputed collection of nonprofessional employees, declared that an appropriate unit. How would that be reviewed? How would it be reviewed? It couldn't be reviewed, and we're not contesting it, because they did exactly that. Well, with no vote. In other words, they basically violated the absolute direct prohibition in the statute. You're saying... You're saying that Leadham v. Kine wouldn't read on that? Your hypothetical, as I understand it, Your Honor, is that you're not giving those professionals an option to opt out by a vote. That's correct. Okay. I would say that that is a Section 7111 ruling, and I think it is actually subject to judicial review. All right. And under Leadham v. Kine or some other authority? No, under the 7123A of the statute, because that is not an appropriate unit determination. They are denying... Well, it is an appropriate unit determination. They just fly in the face of the prohibition and the statute that in making an appropriate unit, you can't combine professionals with nonprofessionals without a vote. Yeah. But it's without a vote has to do with the eligibility to vote, and they're saying as professionals, you get to vote, because they do get to vote. They don't get that separate ballot that's available to professionals, which says you have an option to opt out, and if you do opt out, then you get to decide whether you want a union, and if so, which union. That's an eligibility to vote issue, I believe, and that's covered by 7111 of the statute, not 7112, in our view anyway. And I think here that what we're talking about is, if you look at the actual language of the decision itself, it does not say that its determination on the employee's status is in any way related to its appropriate unit determination. It wouldn't make any difference in our case, whether we were professional or nonprofessional. The FLRA made an appropriate unit determination that everybody in CBP should be in a single unit. That's what they said. And it wouldn't make any difference whether we were professional or nonprofessional to that determination, and if it did make any kind of a difference, then you can't square that with the fact that there were 450 professional employees that came over from U.S. Customs that they put into that particular unit, and there's just no suggestion anywhere that the appropriate unit determination. So it does not, it's not inextricably tied, as the agent, as the FLRA has argued. And we believe that this is a ruling that comes out of 7111 of the, 7111 of the statute. Did the, did your group of employees that you claim to be professionals, were they allowed to vote as to whether or not they wanted to be combined with the nonprofessionals? Ever. In this election? In this election, no, they were not. Because they were deemed to be nonprofessionals? Nonprofessionals. They were permitted to vote, but not on that issue. Okay, now were the professionals who were being put in this grouping, were they given a separate ballot? I assume so, but I cannot say for certain. The, the status is that the election is over, it was over in June, but the FLRA has not certified the results. So we are in a status quo right now. We have no idea when they're going to certify the results. So I don't know, it's not basically public, if you will, what the certified results are. I assume that they were permitted to vote, but I don't know that. Okay, so coming back, the reason I was flirting with Leighton versus Kine, let's assume that there was a clear and arbitrary inclusion of your group as not under the heading of nonprofessionals. Therefore, they didn't get to vote about their inclusion. And they wanted to now challenge it. Is there any avenue of challenge, even if on an objective look at facts, that these people were clearly professionals, now they are thrown into a unit as a minority of, I guess a minority of professionals within a larger unit, all represented by now the same union. Could any of those putative professionals, do they have any way individually to raise a challenge to their being included? And let me again ask you, are you, are you talking about that, that they're put in as professionals, but do not have the right to vote? No, they're brought in as non, they're in as, they are professionals in fact, I'm assuming, but they were not given the opportunity to vote whether they wanted to be combined with nonprofessionals because the FLRA regional director concluded that they weren't professionals. Were not professionals. There may be, individuals may have that opportunity, but I don't know how it could possibly come up. NAAE would lose the right to represent. I know they would. So I'm just wondering who's going to stand up for them if they're in fact professionals in the combined unit? Nobody can. Freedom versus kind would be the way to get them. I don't think so. I think that's a difficult connection to try to draw, although we would like to do that. And there it would have to go to the district court in any event. It would have to go to the district court under the holding of that case. And as I say, that's a, I know it's an old case. It's an old case. I didn't know Justice Whitaker, I haven't run across a Justice Whitaker opinion in a very long time. And that one's been eroded away by many subsequent decisions. Turning now to the merits of the case, we basically are making two arguments here. And the FLRA in our view has ignored some 30 years of history where they have recognized, not the agency, not the union, but FLRA has recognized that our agriculture specialists and their predecessors, the plant protection and quarantine officers, are professional employees. And this recognition was in the form of an official written document. It was basically a certification of representation in which they name people that we represent as professional employees. And that document has existed in one form or another for some 30 years without challenge. And we don't, we believe that that particular recognition constitutes a form of precedent that under the controlling law the FLRA simply either has to follow or if it chooses to deviate from it, and it's free to deviate as long as it provides a rational explanation for that deviation. Were they in a separate unit all that time? They were in a separate unit the entire time. Was there any incentive for anybody to challenge the factual assumption that they were professional? Certainly the agency under which they were operating, which would have been the U.S. Department of Agriculture for most of that 30 years, could very well challenge them. Now, why they would want to challenge them, I'm not really certain. Could be that their job had evolved to a place where they were no longer professionals. Was that precedent based on a contested determination at some point or just an administrative determination? We don't know. There's really nothing in the record because it goes back to basically in the 1970s sometime. We don't know exactly how they got to that particular position. It may have been or it may not have been. We don't even know if the duties of the employees changed or evolved over time. They definitely changed over time. Why should that precedent carry much weight? Because nobody has contested it. FLRA still certifies them under that certificate until recently as professional employees. They're free. If there was a reason to challenge them, nobody did. Well, they didn't. But now all of a sudden the reason is that they're putting together what they deem an appropriate unit under the new restructured DHS. That's certainly true. In our brief, we have cited a number of instances where this issue can come up about the status of professional employees versus nonprofessional in situations that do not involve an appropriate unit determination proceeding at all. And there are many others. We cited like five or six of them and cited the FLRA case. So it could have come up, but it didn't come up. At least nobody wanted to raise it if that issue did arise. It came up in this case, didn't it, because of the appropriate unit determination? I can't tell you what the political motivation was for that. I could speculate. I don't think that that's fair to do so on this record. But I believe that there was a political motivation to do so. They wanted to deprive the NAAE of being able to represent this distinct group of about 1,500 employees so that the CBP would have a single union to deal with. They didn't want to have multiple unions. I don't even think you have to speculate about that. Employers tend to like dealing with the fewest number of unions. And zero would be perfect for them. Well, let's set aside zero. Let's just say it's not. So in the process of deciding what body of employees to bring within the bargaining unit, they had to face up to whether or not, because there is a requirement, if there are going to be professionals and nonprofessionals, they would have to make a proviso for separate ballots. So they had a reason to make the, at least one reason, maybe others, to make the determination. So now they've focused on it, and that's what you're asking us to take a look at and say whether, what, there was substantial evidence, it was clear and arbitrary. All of those things. There's lack of. You have to establish it's reviewable. Correct. I don't even get. You're right. And secondly, too, it's got to be arbitrary and capricious. Correct. I'm jumping over the jurisdiction. I certainly understand. But you understand the issue came up not because FLRA raised it. It was raised by the Customs and Border Protection at the very 11th hour just before our hearings. They decided, oh, we're going to challenge your status. And so, you know, we had to reprep all of our witnesses, but that's how it came up. But, I mean, you're absolutely correct. I mean, you know, we have to establish that it was arbitrary and capricious and all of those kinds of things, and which I think we have done so on brief. I'd like to reserve the time. Thank you. May it please the Court, my name is William E. Persina, appearing on behalf of the Respondent Federal Labor Relations Authority. Seated with me at council table today is Mr. Howard Scherer from the Department of Justice. Mr. Scherer is representing the Customs and Border Patrol Directorate, and we have seated four minutes of our 20 minutes of argument time to Mr. Scherer. It is, of course, axiomatic that we first look to the plain meaning of a statute in order to resolve a case, and with that directive in mind, I would like to look at the plain language of the labor statute to assist us in resolving the jurisdictional issue that's before us today. I think we're all in agreement here that the starting point for our analysis is section 7123A2 of the statute. Now, section 7123A2 says that any person that is aggrieved by a final order of the authority, unless the order involves an appropriate unit determination under section 7112, may obtain review of that order. And I'd like to take this opportunity just to address, Judge Fischer, the Leedham v. Kine basis for jurisdiction that Your Honor brought up with Mr. Mann. If we look at Leedham v. Kine, we see a fact situation that is markedly different than this case. We don't believe that Leedham v. Kine would apply if this had been brought as a Leedham suit, and I suspect that we would have sought to dismiss it. Let's look at the facts in Leedham. In Leedham, the NLRB had a situation where there was a unit of professional employees, and it was conceded by all concerned, including the Board, there was no dispute that this was a unit of professional employees. There was another union that had some non-professional employees that sought to include them in the professional unit. The Board, knowing that it was dealing with professionals within the definition of the Act, said, well, this unit still retains its professional essence, so a few non-professionals is okay. That was the situation in Leedham that the Court struck down. We do not have that situation here. We have employees who have been found, based on a very substantial record, not to be professionals. Well, that's a factual determination. It's true. But the concept that was being addressed by the Supreme Court in Leedham was what I was interested in, which is, let's suppose it was our conclusion, just hypothetically, that this professional unit that had been a professional unit for 30 years, that was so plainly professional, but nonetheless the FLRA, for whatever reasons, decided to include it within the overall general bargaining unit with non-professionals and denied the professionals the right to vote. Well, I think then we'd have the situation I understand, Your Honor, to be describing, is we're overturned on the merits, that we are wrong. But how do we get to it? Because your argument, as I understand it, is no, we don't have jurisdiction. That's correct. Because they were placed in it as part of an appropriate bargaining unit, and we have no role to play. That is correct, Your Honor. So notwithstanding the statute specifically prohibits combining professionals and non-professionals without a vote of consent to merge the two, you're saying as long as FLRA makes a decision that their professional even applies in the face of any objective evidence, we can't review it? Well, no, Your Honor, we have to distinguish, and Leedham case law does this, we have to distinguish between a garden-variety legal error. Let's just assume for the sake of discussion that we have that here, that substantial evidence does not support our holding. We think substantial evidence amply supports that holding. But let's just assume for the sake of this discussion that it did not. That would be something that would be a garden-variety legal error that Leedham would not address. In order to have a good Leedham claim here, we would have to have an authority decision that said, oh, yes, we know that these employees, these agricultural specialists, are in fact professionals within the meaning of the statute. But nonetheless, we think it's okay for some non-pros to be in there, and we're not going to give the pros the vote. That is Leedham. And the language of Leedham, I think, is fairly well established. You have to have an agency that is basically exceeding its jurisdiction. Congress has laid out the line that you cannot cross, and the agency has nonetheless crossed it. And Leedham is designed... It has jurisdiction to make a garden-variety error combining professionals with non-professionals. We have, well, again, we don't believe we made a garden... We have an argument that we have no jurisdiction to review a classification of status, which winds up translating into a body of employees who arguably, clearly, indisputably, in these ranges, wind up in a combined unit without going through the vote requirement that the statute clearly mandated. Congress, in Section 7123A2, said that this court, or really no court, gets to review that determination under that review basis. Because I'm a line drawer. Every time I think about something, okay, if I'm going to draw a line, how am I going to be able to principally do this? And if we review this, why wouldn't every unit of determination be reviewable? Well, it would be reviewable, Your Honor. That's just it. Under that argument, any time we make what is alleged to be a wrong determination, not supported by substantial evidence, Leadom would be alleged. All of these cases would be filed in district court, because Leadom must be filed under general review statutes in district courts, not under Section 7123A2. And we would have, in effect, the circumventing of the judicial prohibition, congressional prohibition on judicial review of appropriate unit determinations that Congress explicitly did not want. So we think that if we go that route, and we expand Leadom to go to alleged mistakes of law, then we have done away with the limitation on judicial review. The appellant said he doesn't see it as a Leadom situation. Well, there's that, too, yes. Okay. Well, I believe there are a few points that Mr. Mann addresses here. One of them is we really don't have an appropriate unit determination at all here. He says what we have is a deprivation of a statutory right for these employees. The problem with that argument is that it puts the cart before the horse. These employees were determined not to be professionals. And there's no dispute in this case that professional employees, if they are found to be so, do, in fact, have that statutory right. But based on the record, correctly, these employees are not. So we can't put the cart before the horse. And it really does not matter. There's another point to be made here, I think. Under Section 7123A2, it does not matter what the collateral consequences of the appropriate unit determination are in terms of granting rights, extinguishing rights, maintaining rights. The only thing we care about under Section 7123A2, the plain language of Congress, is do we have an appropriate unit determination made by the authority? Now, if I could, I would like to address the plain language of the statute as it addresses this issue. Let's take a look at Section 7112. The title of Section 7112 is Determination of Appropriate Units for Labor Organization Representation. And this is all in the vein of trying to refute Mr. Mann's arguments. So everything that takes place in Section 7112 that is covered there pertains to an appropriate unit determination. Now, let's look at Subsection A. Subsection A is what I call the organizational component to an appropriate unit determination. It's which parts of an agency should be put together to form a bargaining unit based on a community of interest criteria, the efficiency of dealing criteria under A, et cetera. That's one type of appropriate unit determinations. Now, let's take a look at Subsection B. Subsection B explicitly says the authority shall not determine a unit to be appropriate if it contains certain types of employees. This is what I would call the employee content dimension to an appropriate unit determination. So the authority cannot certify as appropriate a unit that contains one of these employees. And significant for our purposes is Section 7112B-5, which deals with professionals and says a professional cannot be put in a bargaining unit unless that professional has been given the opportunity to vote for a separate professional unit. And what happens when it violates one of those subsections? I'm sorry, Your Honor? What happens if the FLRA violates one of those five subsections? Well, if there is not a LEDM claim, then that is... What is it? Pardon? What is it? There's no review? There is no review. If the statute has a mandatory, clearly stated prohibition, an FLRA can ignore it? No, Your Honor. What's the remedy? A LEDM suit is for a mandatory prohibition. We've got mandatory prohibitions. It says, nor shall a unit be determined to be appropriate if it includes, except various things, any management official or supervisor. It does that. It puts this CEO level, and the government puts a section head. Clearly a supervisor puts it in the unit with the employees that the section head reviews. Managers. What's the remedy? Well, again, Your Honor, I go back to what I said before. If the authority's decision explicitly says, yes, we know that these are professionals, but we still are going to put non-pros in without giving the pros the opportunity... Stay away from professional, because supervisors, talk about bright lines, pretty easy because the salary and grade levels define who supervisors are pretty clearly. The whole job description goes into it. None of this having to go to extrinsic sources or whatever. Confidential employee. Correct. In other words, what happens under the statute, the clear statutory language, if the board puts a prohibited employee into a bargaining unit? Well, Your Honor, I think we'd have to look at what the authority did. If the authority said, the status of this employee as a supervisor has been challenged, and there are authority decisions on these issues. The status of this employee as a supervisor has been questioned. We hold a hearing. We take evidence. What does this employee do? There are criteria for determining who's a supervisor. If the authority applies those criteria, weighs the evidence and says, you know, the evidence supports a finding that the employee is not a supervisor. Therefore, the employee is in. There would be no review of that. That's what Section 7123A2 is all about. Now, if the authority, on the other hand, says, yes, oh, we know that this employee is a supervisor. But that's okay. We think we have a better policy than the Congress. How do you know that there are gradations between what you just described and the weighing of the evidence? Well, Your Honor, that's one thing about LEADM is that the gradation is quite clear. I'm not trying to push you into LEADM. I'm accepting that LEADM isn't the way. What I want to understand is where do we have jurisdiction, because you're saying that it's all part of an appropriate unit determination. What they're saying is, no, it's not. There's a precondition to before you can make an appropriate unit determination is that there has to be an employee who can be put into a unit. It's already been predetermined by Congress what the appropriate unit is, and there are certain classes of employees you cannot combine. Professional has this quirk about the vote. The confidential employee, supervisor, those kinds of things are structurally based on the NLRA. I mean, that's in private industry. The same problem is in public employment. You don't put deputy police chiefs in with the rank and file. Well, Your Honor, Congress in Section 7123A2 clearly made the choice and the decision that the authority would get to make those calls, but they would not, as in the private sector, be subject to judicial review in this court. They can be wrong and we can't touch it, essentially. We can make a garden-of-a-variety legal error under Section 7123A2, and that would not be subject to review under Section 7123A. We think that's correct. We think that's what Congress said. Your colleague's brief, like I noted in the green brief,  first ruled that agricultural specialists are not professional employees within the meaning of 7103A15. End of sentence with ellipses. Then, as to the appropriate unit determination, the ROD ruled and the regional director ruled in favor of the CPB's petition for a unit of CPB employees and rejected the appropriateness of the NAAE's petition for separate units of ag specialists and ag techs. So the Justice Department, writing in its brief, broke it down into two steps, and I think that is exactly the argument that NAAE is making. What FLRA, the regional director, did was first make a determination as to which employees it could deal with in creating an appropriate bargaining unit. Your argument it's related to, it's inherent, and all of that. But you say it's clear. I think it's clear. No, we don't argue an inherent argument. We argue the plain language of Section 7112B. That section specifically says the authority cannot determine a unit to be appropriate if it contains these employees. That could not make a clearer connection between this determination and an appropriate unit determination. I don't think that it would be possible to have a clearer connection. And let me allude further on this score to the legislative history of the statute, which the authority has recognized in its case law. I think in the volume 13 decision that we cited at page 433, the authority makes reference to a House report on a bill that became the statute. And in that House report it says, the definition of a professional employee has primary relevance for appropriate unit determinations under Section 7112. Again, we could not link these two concepts up more closely and directly if we tried. So when we talk about Section 7103A15, definitions and applications, that's just a definitional provision which is in support of the substantive mandate in Section 7112B that the authority not determine appropriate units that contain professional employees. So every time we see a reference for Section 7103A15, we're talking about Section 7112. That's the significance of that. And, in fact, I believe part of Mr. Mann's argument in this case is, well, the authority never says anything about Section 7112 when it's talking about agriculture specialists as professional employees. It does. Excerpts of record page 210 at the top, which quotes that legislative history that I just recited to the Court, makes that link explicit. The fact that whether the authority says it or not is really not even the most significant point. The point is that's what the statute says. That's what Congress intended. And that's what the authority has carried out, and we think that the Court should recognize that limitation on judicial review and to grant the motion to dismiss and not even reach the merits in this case. There's one other. Are you going to save time for your colleague? Oh. You're doing really well, but you're using up all of your time. I don't want to do that. I will defer to Mr. Sherry. The Department of Justice really doesn't like to give up its time. We don't like to aggravate them. We don't like aggravating the unions either. We don't want to aggravate anyone. Prime mediation really works well. May it please the Court, I'm Howard Sherr from the Department of Justice representing Customs and Border Protection, which I'll call Customs. I think the case here, you have to look at 7112b-5, as the Court did. The only place professional employee ever shows up other than in the definitional section is in 7112b-5, so that it is integrally related and only part of the appropriate unit determination. The fact that the RD started off by making the first cut as to whether, in fact, these employees were professional employees or not was only in an effort to then determine, in connection with the broader appropriate unit principle, which appropriate unit they would fit into. Remember, in this case, there was a group of Border Patrol employees who were going to be left in with the same grouping. The Customs was seeking a clarification as to everybody else and was seeking a clarification that there would be two broad groupings, an appropriate unit of nonprofessional employees and an appropriate unit of professional employees, and wanted to lump into the appropriate unit of nonprofessional employees those employees that are called agricultural specialists. So by nature, the Regional Director and FLRA had to make the cut on professional employees, but that cut comes directly out of 7112b-5. Go ahead. Well, what about a Ponce argument that he said, you know, we've been professionals from, you know, from the beginning of time, you know, since 00 or, you know, or BC or whatever. Now, why suddenly did they become nonprofessionals? And, of course, that's the merits issue, which we didn't brief, but we support the authority on this, and I think the authority's position is there was a nonadjudicated understanding between agriculture and the union that they would be treated this way. But in 2002, everything changed with Homeland Security Act and the changing of the duties of all the employees that then merged into what became Customs and Border Protection. And these employees that were with agriculture formerly, who merged in with the Office of Field Operations at Customs, had new duties, et cetera. What happened prior to that, that arrangement that was never challenged or whatever between agriculture and the union certainly isn't. Well, I think he does concede it's not. Well, he, you know, he would like it to be precedent, but it, you know, it isn't the end of the inquiry, I guess. That's right, and that's why Customs and Border Protection filed, and this is at page 200 of the excerpt of record where the authority sums up. That's why Customs sought a clarification of the appropriate units in this case. It had the merger of what turned out to be three or four different agencies before getting parts of all those agencies into a single agency, Customs and Border Protection. All of the prior employees who were being merged in represented by three and four unions. That's why Customs actually then sought the clarification of the appropriate unit and then an election. And that's what happened. That's the cart that came before the horse that came before the cart in this case was the clarification of the appropriate unit. Professional employees on the one hand, nonprofessional employees on the other. Customs was seeking essentially to have one union represent each of those separate groupings, but if under the election ruling as it unfolded, if the professional employees agreed to be represented in a unit with the nonprofessional employees, which is in fact what happened with the election, then so be it, but it would still be one unit, one union, and that's what Customs was seeking to have, a clarification, a consolidation, and an appropriate representation at that level. And I think Isinger is the key case here. In Isinger, the reason the Court did undertake to resolve a petition filed under 7111 was because in that case, the authority erroneously determined against the standing of the individual to file the 7111 petition. And this Court said, no, at the first instance, that's where you made the error. You never got to the appropriate unit determination. And in Isinger, the Court said very clearly, if the authority had in fact appropriately had in fact investigated the petition that was filed in that case, or it said, if it does so after our decision and renders a decision, that's the end of it. I think we're familiar with this. No further review. Well, I think it's key because in Loy, AFGE versus Loy, which the D.C. Circuit ruled in, if you'll notice, the analysis there was that the Transportation Security Administration ruled that there would be no collective bargaining for employees. And that was upheld in the context of that case. But what happened was the union filed two different or tried to undertake two different acts. One was to file something before the authority, a petition under 7111 for a representation. And the other was to go into district court to try to upset Administrator Loy's decision. You're over time. We've got another case behind you. I want to ask one question, though. And that is, make sure I understand, under your argument, under 7123, it says, any person agreed by any final order of the authority other than an order under Section 7112 of this title involving an appropriate unit determination. Was the order issued by the regional director an order under 2112? 7112. Yes. Our argument is that any time the authority makes an appropriate unit determination, in this case regarding professional status. But no, by its terms was it? Excuse me? By its own terms was it? If we were looking at the order, I don't have it in front of me. That's why I'm asking. Did the regional director say, pursuant to Section 7112, I am hereby in connection with, hopefully in these terms that I'm sure he didn't say, I'm making a determination that this group is a group of nonprofessionals? No, not by those terms. Okay. Did his order, is it that order we are reviewing? You are reviewing a general order that determined professional and nonprofessional status and appropriate unit status. Okay. There were two separate orders? No, one order that did the horse before the cart, namely, before it determined ultimately what the appropriate units would be, had to determine whether employees in connection with that were either professional or nonprofessional. So it was all part of one order? All part of one order. Thank you. Is he correct about that it was all one order? Actually, there are two separate decisions, and I think that the final decision of FLRA on February of 2006 is the order that's under review at this time. And the regional director did not tie in the finding about the professional status with Section – only because it was raised by CBP. In connection with what? In connection with the statement that CBP made on the record that they were going to challenge in this hearing the status of the – In connection with the appropriate bargaining. Yeah, that's when it came up in that context, there's no doubt about it. Mr. Shear misspoke about the Border Patrol. The Border Patrol is a huge unit of like 9,000 employees who are nonprofessionals. Of course, CBP, the rest of CBP, the other 20,000 are made up of primarily nonprofessionals, except for, as I indicated earlier, 450 employees who are professionals that they put in that same unit. Now, it was also mentioned that there are – Section 7123 has two components, an A and a B. And subpart B was described as – I think the terminology was employee content. But if you look at the decision itself, there's never any mention of Section 7123B. The only mention is of 7123A. So its appropriate unit determination was made entirely on the basis of subsection A, not subsection B. Now – Wait a minute. Sure. 7123 you're talking about? I'm sorry. Forgive me. 7112. I'm sorry. Yes. 7112. 7112B does – they did provide for a separate election. I mean, a separate ballot, didn't they? I don't know. I have to presume they did. We are not involved in the election because of the results that we're challenging here. I couldn't say for sure. All right. Now, in your hypothetical, Judge, if the supervisors were determined based on an analysis to be, let's say, nonprofessional, and they disagreed with that determination, you've asked, well, what is the remedy of that union that would like to represent those people that are now taken outside? I think the situation would be the same as we have here today. I think they would be able to challenge it under 7123A. I think that is still available to them. And I think that while we can't point to any situation where that hasn't arisen, but I know no reason why it shouldn't. Now, Mr. Pestino also mentioned the legislative history, and he quoted there a provision that talked about this appropriate unit determination is the primary area in which this whole issue of professional employee may come up. I mean, primary is a correct word, but it can come up in other situations, and we have cited a number where it has. But let me also quote something from that report. And this is from the conference report that says in connection with 7123, and this is quoted in Eisinger, and they're talking now about what does this something that involves an appropriate unit determination. And they said with respect to that, as in the public sector, there will be no judicial review of the authority's determination of the appropriateness of bargaining units. And we are not questioning the appropriate unit determination they made. The fact that they have decided there will be only one unit, we're not challenging that, that they have denied NAA's petition to have a separate appropriate unit just for the people we represent, the agriculture specialists and agriculture technicians, that was denied. We are not challenging those appropriate unit determinations, just this one particular ruling that is, I think, a discrete part of it. Thank you very much. Thank you. I appreciate it.
judges: Gibson , Fisher, Callahan